1  Gary M. Messing, Bar No. 75363
   gary@majlabor.com

2  Monique Alonso, Bar No. 127078
   monique@majlabor.com

3  **MESSING ADAM & JASMINE LLP**
   980 9th Street, Suite 380

4  Sacramento, California 95814
   Telephone:   916.446.5297

5  Facsimile:   916.448.5047

6  Attorneys for Defendant
   LOS RIOS CLASSIFIED EMPLOYEES

7  ASSOCIATION

8

         **UNITED STATES DISTRICT COURT**

9         **EASTERN DISTRICT OF CALIFORNIA**

10

11

12  KRISTINE KURK, *individual*; and SUSAN
   SHROLL, *individual*,

   Case No. 2:19-cv-00548-KJM-DB

13         Plaintiffs,

   **STATEMENT OF RECENT DECISION IN
   SUPPORT OF DEFENDANT LOS RIOS
   CLASSIFIED EMPLOYEES**

14        v.

   **ASSOCIATION'S MOTION FOR
   SUMMARY JUDGMENT**

15  LOS RIOS CLASSIFIED EMPLOYEES
   ASSOCIATION; SERVICE EMPLOYEES

16  INTERNATIONAL UNION LOCAL 620;
   LOS RIOS COMMUNITY COLLEGE

   Date:      September 25, 2020
   Time:      10:00 a.m.
   Crtrm.:   3

17  DISTRICT; SAN LUIS COASTAL UNIFIED
   SCHOOL DISTRICT; JOHN KNIGHT, in his

18  official capacity as President of the Board of
   Trustees of the Los Rios Community College

19  District; ERIC PRATER in his official
   capacity as Superintendent of the San Luis

20  Coastal Unified School District; and XAVIER
   BECERRA, in his official capacity as

21  Attorney General of California,

22         Defendants.

23

24       Defendant Los Rios Classified Employees Association herewith submits recent authority

25  decided after submission of the papers and relevant to its Motion for Summary Judgment in the

26  above-captioned matter.

27  / / /

28  / / /

00094003-1

1    Attached hereto as Exhibit A is a true and correct copy of the September 16, 2020, Opinion

2    by Hon. M. Margaret McKeown of the United States Court of Appeals for the Ninth Circuit

3    affirming the district court's dismissal in *Belgau v. Inslee, et al.* Case No. 19-35137 (D.C. No.

4    3:18-cv-05620-RJB).

5

6    Dated:  September 17, 2020                        MESSING ADAM & JASMINE LLP

7

8                                            By _____/s/ Monique Alonso_____

9                                                 Gary M. Messing

10                                                Monique Alonso
                                                 Attorneys for Defendant

11                                                LOS RIOS CLASSIFIED EMPLOYEES
                                                 ASSOCIATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MESSING ADAM &
JASMINE LLP
ATTORNEYS AT LAW

00094003-1                                        2
STATEMENT OF RECENT DECISION IN SUPPORT OF DEFENDANT LOS RIOS CLASSIFIED EMPLOYEES
ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT

# Exhibit A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MELISSA BELGAU; DONNA BYBEE; MICHAEL STONE; RICHARD OSTRANDER; MIRIAM TORRESPL; KATHERINE NEWMAN; GARY HONC, *Plaintiffs-Appellants*, | No. 19-35137 D.C. No. 3:18-cv-05620-RJB |
| v. | |
| JAY ROBERT INSLEE, in His Official Capacity as Governor of the State of Washington; DAVID SCHUMACHER, in His Official Capacity as Director of the Washington Office of Financial Management; JOHN WEISMAN, in His Official Capacity as Director of the Washington Department of Health; CHERYL STRANGE, in Her Official Capacity as Director of the Washington Department of Social Health and Services; ROGER MILLAR, in His Official Capacity as Director of the Washington Department of Transportation; JOEL SACKS, in His Official Capacity as Dir. of Washington Department of Labor and Industries; WASHINGTON FEDERATION OF STATE EMPLOYEES, (AFSCME, Council 28), *Defendants-Appellees.* | OPINION |

2                    BELGAU V. INSLEE

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, District Judge, Presiding

Argued and Submitted December 10, 2019
Seattle, Washington

Filed September 16, 2020

Before:  M. Margaret McKeown and Morgan Christen,
Circuit Judges, and M. Douglas Harpool,[*] District Judge.

Opinion by Judge McKeown

---

**SUMMARY**[**]

---

**Civil Rights**

The panel affirmed the district court's dismissal of a
putative class action brought pursuant to 42 U.S.C. § 1983
alleging that deduction of union dues from plaintiffs'
paychecks violated the First Amendment.

Plaintiffs are public employees who signed membership
agreements authorizing Washington state to deduct union
dues from their paychecks and transmit them to the
Washington Federation of State Employees, AFSCME

---

[*] The Honorable M. Douglas Harpool, United States District Judge
for the Western District of Missouri, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

Council 28 ("WFSE"). They had the option of declining union membership and paying fair-share representation (or agency) fees. After the decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), which held that compelling nonmembers to subsidize union speech is offensive to the First Amendment, employees notified WFSE that they no longer wanted to be union members or pay dues. Per this request, WFSE terminated employees' union memberships. However, pursuant to the terms of revised membership agreements, Washington continued to deduct union dues from employees' wages until an irrevocable one-year term expired.

The panel held that plaintiffs' claims against WFSE failed under § 1983 for lack of state action. The panel held that neither Washington's role in the alleged unconstitutional conduct nor its relationship with WFSE justified characterizing WFSE as a state actor. At bottom, Washington's role was to enforce a private agreement. *See Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844 (9th Cir. 2017) ("there is no state action simply because the state enforces [a] private agreement"). Because the private dues agreements did not trigger state action and independent constitutional scrutiny, the district court properly dismissed the claims against WFSE.

Addressing whether the claims for prospective relief against Washington were moot, the panel held that the claims fell within the "capable of repetition yet evading review" mootness exception. The panel held that the challenged action, continued payroll deduction of union dues after an employee objects to union membership, capped at a period of one year, was too short for judicial review to run its course.

4                         BELGAU V. INSLEE

The panel held that the First Amendment claim for prospective relief against Washington failed because employees affirmatively consented to the deduction of union dues. The panel rejected employees' argument that the Supreme Court's decision in *Janus* voided the commitment they made and now required the state to insist on strict constitutional waivers with respect to deduction of union dues. The panel held that *Janus* did not extend a First Amendment right to avoid paying union dues, and in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement. The panel held that neither state law nor the collective bargaining agreement compelled involuntary dues deduction and neither violated the First Amendment. The panel concluded that in the face of plaintiffs' voluntary agreement to pay union dues and in the absence of any legitimate claim of compulsion, the district court appropriately dismissed the First Amendment claim against Washington.

## COUNSEL

James G. Abernathy (argued), Olympia, Washington, for Plaintiffs-Appellants.

Matthew J. Murray (argued), Scott A. Kronland, and P. Casey Pitts, Altshuler Berzon LLP, San Francisco, California; Edward E. Younglove III, Younglove & Coker PLLC, Olympia, Washington; for Defendant-Appellee Washington Federation of State Employees, (AFSCME, Council 28).

Alicia Orlena Young (argued), Senior Counsel; Kelly M. Woodward, Attorney; Robert W. Ferguson, Attorney

BELGAU V. INSLEE                    5

General; Office of the Attorney General, Olympia, Washington; for Defendants-Appellees Jay Robert Inslee, David Schumacher, John Weisman, Cheryl Strange, Roger Millar, and Joel Sacks.

---

**OPINION**

McKEOWN, Circuit Judge:

The Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31* was a gamechanger in the world of unions and public employment.  138 S. Ct. 2448 (2018).  In *Janus* the Court concluded that compelling nonmembers to subsidize union speech is offensive to the First Amendment.  Public employers stopped automatically deducting representation fees from nonmembers.

But the world did not change for Belgau and others who affirmatively signed up to be union members.  *Janus* repudiated agency fees imposed on nonmembers, not union dues collected from members, and left intact "labor-relations systems exactly as they are."  *Id.* at 2485 n.27.  Belgau and fellow union-member employees claim that, despite their agreement to the contrary, deduction of union dues violated the First Amendment.  Their claim against the union fails under 42 U.S.C. § 1983 for lack of state action, a threshold requirement.  Their First Amendment claim for prospective relief against Washington state also fails because Employees affirmatively consented to deduction of union dues.  Neither state law nor the collective bargaining agreement compels involuntary dues deduction and neither violates the First Amendment.  We affirm the district court's dismissal of the case.

6                           BELGAU V. INSLEE

## BACKGROUND

The putative class action plaintiffs Melissa Belgau, Michael Stone, Richard Ostrander, Miriam Torres, Katherine Newman, Donna Bybee, and Gary Honc (collectively, "Employees") work for Washington state and belong to a bargaining unit that is exclusively represented by the Washington Federation of State Employees, AFSCME Council 28 ("WFSE"). *See* RCW 41.80.080(2)–(3). Washington employees are not required to join a union to get or keep their jobs, though around 35,000 of the 40,000 employees in the bargaining unit are WFSE members. *See* RCW 41.80.050.

Employees became union members within three months of starting work. They signed membership agreements authorizing their employer, Washington state, to deduct union dues from their bi-weekly paychecks and transmit them to WFSE.

At the time Employees signed the membership cards, union dues were between 1.37% and 1.5% of base wages. They had the option of declining union membership and paying fair-share representation (or agency) fees, which were approximately 65–79% of union dues. Agency fees covered the cost incurred by the union in representing the interests of all employees—members and nonmembers alike—in the bargaining unit over the terms of employment. *See Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 232, 235 (1977), *overruled by Janus*, 138 S. Ct. 2448. The monies could not be used for First Amendment activities that were "not germane to [the union's] duties as collective-bargaining representative." *Id.* at 235.

Joining the union conferred rights and benefits. Employees could vote on the ratification of collective

bargaining agreements, vote or run in WFSE officer elections, serve on bargaining committees, and otherwise participate in WFSE's internal affairs. Employees also enjoyed members-only benefits, including discounts on goods and services, access to scholarship programs, and the ability to apply for disaster/hardship relief grants.

Based on the authorization in the membership agreements, Washington deducted union dues from Employees' paychecks. Article 40 of the 2017–2019 collective bargaining agreement ("CBA") between Washington and WFSE required Washington to deduct "the membership dues from the salary of employees who request such deduction . . . on a Union payroll deduction authorization card," and to "honor the terms and conditions" of these membership cards. Washington law also directed Washington to collect the dues on behalf of WFSE from union members who authorized the deduction. *See* RCW 41.80.100(3)(a).[1]

In 2017, WFSE circulated a revised membership agreement. The revised card, a single-page document, headlined: "Yes!" the signatory "want[s] to be a union member." A series of voluntary authorizations followed. The signatory "voluntarily authorize[ed]" and "direct[ed]" Washington to deduct union dues and remit them to WFSE. The signatory agreed that the "voluntary authorization" will be "irrevocable for a period of one year." The signatory reiterated and confirmed these voluntary authorizations

---

[1] Citations are to the section numbers in effect at the time of the deductions. The current version of RCW 41.80.100, which became effective on July 28, 2019, removes the authority for collecting representation fees but leaves intact the language about collecting membership dues. *See* Washington Laws of 2019, ch. 230 §§ 15, 18.

above the signature line.  Employees were not required to
sign the revised cards to keep their jobs or remain as WFSE
members.  Employees signed the revised cards.

After the Supreme Court decided *Janus* in June 2018,
Washington and WFSE promptly amended the operative
2017–2019 CBA.  These July 2018 and August 2018 Memos
of Understanding removed Washington's authority to deduct
an "agency shop fee, non-association fee, or representation
fee" from nonmember paychecks.  However, the updated
provision did not change Washington's obligation to collect
"membership dues" from those who authorized the
deduction and to "honor the terms and conditions of each
employee's signed membership cards."

After the *Janus* decision, Employees notified WFSE that
they no longer wanted to be union members or pay dues.  Per
this request, WFSE terminated Employees' union
memberships.  However, pursuant to the terms of the revised
membership agreements, Washington continued to deduct
union dues from Employees' wages until the irrevocable
one-year terms expired.  The dues were last collected from
Employees when the one-year terms expired in April 2019.

In August 2018, Employees filed a putative class action
against the state defendants—Washington State Governor
Jay Inslee, and state agency directors and secretaries David
Schumacher, John Weisman, Cheryl Strange, Roger Millar,
and Joel Sacks (collectively, "Washington")—and WFSE
alleging that the dues deductions violated their First
Amendment rights and unjustly enriched WFSE.
Employees sought injunctive relief against Washington from
continued payroll deduction of union dues, and
compensatory damages and other relief against WFSE for
union dues paid thus far.  The district court granted summary
judgment for Washington and WFSE and dismissed the case.

## ANALYSIS

### I. THE § 1983 CLAIM AGAINST THE UNION FAILS FOR LACK OF STATE ACTION

The gist of Employees' claim against the union is that it acted in concert with the state by authorizing deductions without proper consent in violation of the First Amendment. The fallacy of this approach is that it assumes state action sufficient to invoke a constitutional analysis. To establish a claim under 42 U.S.C. § 1983, Employees must show that WFSE deprived them of a right secured by the Constitution and acted "under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989). The Supreme Court has long held that "merely private conduct, however discriminatory or wrongful," falls outside the purview of the Fourteenth Amendment. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (citation omitted).

The state action inquiry boils down to this: is the challenged conduct that caused the alleged constitutional deprivation "fairly attributable" to the state? *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013); *see Blum*, 457 U.S. at 1004 ("constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains"); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) (the challenged unconstitutional conduct must be "properly attributable to the State"). The answer here is simple: no.

We employ a two-prong inquiry to analyze whether Washington's "involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which plaintiff complains." *Ohno*, 723 F.3d at 994; *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (two-prong

test). The first prong—"whether the claimed constitutional deprivation resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible'"—is not met here. *Ohno*, 723 F.33d at 994 (quoting *Lugar*, 457 U.S. at 937). It is important to unpack the essence of Employees' constitutional challenge: they do not generally contest the state's authority to deduct dues according to a private agreement. Rather, the claimed constitutional harm is that the agreements were signed without a constitutional waiver of rights. Thus, the "source of the alleged constitutional harm" is not a state statute or policy but the particular private agreement between the union and Employees. *Id.*

Nor can Employees prevail at the second step—"whether the party charged with the deprivation could be described in all fairness as a state actor." *Id.* As a private party, the union is generally not bound by the First Amendment, *see United Steelworker of Am. v. Sadlowski*, 457 U.S. 102, 121 n.16 (1982), unless it has acted "in concert" with the state "in effecting a particular deprivation of constitutional right," *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citations omitted). A joint action between a state and a private party may be found in two scenarios: the government either (1) "affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party," or (2) "otherwise has so far insinuated itself into a position of interdependence with the non-governmental party," that it is "recognized as a joint

participant in the challenged activity." *Ohno*, 723 F.33d at 996. Neither exists here.[2]

*No Coercion or Oversight*. The state's role here was to permit the private choice of the parties, a role that is neither significant nor coercive. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999) (requiring "significant assistance"); *Lugar*, 457 U.S. at 937 (requiring "significant aid"). The private party cannot be treated like a state actor where the government's involvement was only to provide "mere approval or acquiescence," "subtle encouragement," or "permission of a private choice." *See Sullivan*, 526 U.S. at 52–54.

WFSE and Employees entered into bargained-for agreements without any direction, participation, or oversight by Washington. "The decision" to deduct dues from Employees' payrolls was "made by concededly private parties," and depended on "judgments made by private parties without standards established by the State." *Id.* at 52 (citation omitted); *see Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1034 (9th Cir. 1989) ("Only private actors were responsible for the [challenged] decision" where "the decision ultimately turned on the judgments made by private parties according to professional standards that are not established by the State." (quotation marks and citation omitted)). Therefore, when Employees "signed" the membership cards that authorized the dues deductions, they "did not do so because of any state action." *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1201 (9th Cir.

---

[2] Nor does WFSE qualify as a state actor under other tests the Supreme Court has articulated—the public function, the state compulsion, and the governmental nexus tests. *See Desert Palace*, 398 F.3d at 1140.

12                    BELGAU V. INSLEE

1998), *overruled on other grounds by E.E.O.C. v. Luce,
Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003);
*see Canlis v. San Joaquin Sheriff's Posse Comitatus*,
641 F.2d 711, 717 (9th Cir. 1981) ("purely private"
decisions, "exclusively from within the organization itself,"
do not make WFSE a state actor).

Although Washington was required to enforce the
membership agreement by state law, it had no say in shaping
the terms of that agreement. The state "cannot be said to
provide 'significant assistance' to the *underlying* acts that
[Employees] contends constituted the core violation of its
First Amendment rights" if the "law *requires*" Washington
to enforce the decisions of others "without inquiry into the
merits" of the agreement. *Ohno*, 723 F.3d at 996–97.
Washington's "mandatory indifference to the underlying
merits" of the authorization "refutes any characterization" of
WFSE as a joint actor with Washington. *Id.* at 997.

*Ministerial Processing*. At best, Washington's role in
the allegedly unconstitutional conduct was ministerial
processing of payroll deductions pursuant to Employees'
authorizations. But providing a "machinery" for
implementing the private agreement by performing an
administrative task does not render Washington and WFSE
joint actors. *Sullivan*, 526 U.S. at 54. Much more is
required; the state must have "so significantly encourage[d]
the private activity as to make the State responsible for" the
allegedly unconstitutional conduct. *Id.* at 53.

*No Symbiotic Relationship*. Nor did Washington
"insinuate[] itself into a position of interdependence with"
WFSE. *Ohno*, 723 F.3d at 996 (citation omitted). A merely
contractual relationship between the government and the
non-governmental party does not support joint action; there
must be a "symbiotic relationship" of mutual benefit and

"substantial degree of cooperative action." *Sawyer v. Johansen*, 103 F.3d 140, 140 (9th Cir. 1996); *Collins*, 878 F.2d at 1154. Thus, no significant interdependence exists unless the "government in any meaningful way accepts benefits derived from the allegedly unconstitutional actions." *See Ohno*, 723 F.3d at 997. Here Washington received no benefits as a passthrough for the dues collection. The state remitted the total amount to WFSE and kept nothing for itself. Far from acting in concert, the parties opposed one another at the collective bargaining table. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 196 (1988) (where the private actor "acted much more like adversaries than like partners," the private actor is "properly viewed as . . . at odds with the State"). Because neither Washington's role in the alleged unconstitutional conduct nor its relationship with WFSE justify characterizing WFSE as a state actor, Employees cannot establish the threshold state action requirement.

We are not persuaded by Employees' attempt to avoid the state action analysis by framing their grievances as a direct challenge to government action. This approach does not square with their theory of allegedly insufficient consent for dues deduction, rather than a challenge to the law or the CBA. As we have observed, "[i]f every private right were transformed into a governmental action just by raising a direct constitutional challenge, the distinction between private and governmental action would be obliterated." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 839 (9th Cir. 2017) (citation omitted).

Neither are we swayed by Employees' attempt to fill the state-action gap by equating authorized dues deduction with compelled agency fees. The actual claim is aimed at deduction of dues without a constitutional waiver, not a

14                           BELGAU V. INSLEE

deduction of agency fees, which did not occur.**³** *See Blum*,
457 U.S. at 1004 (state action analysis is aimed at "the
*specific conduct* of which the plaintiff complains" (emphasis
added)).

At bottom, Washington's role was to enforce a private
agreement. *See Roberts*, 877 F.3d at 844 ("there is no state
action simply because the state enforces [a] private
agreement").  Because the private dues agreements do not
trigger state action and independent constitutional scrutiny,
the district court properly dismissed the claims against
WFSE.**⁴**

## II. EMPLOYEES HAVE NO FIRST AMENDMENT CLAIM AGAINST THE STATE

### A. MOOTNESS

Employees' sole remaining claim against Washington is
for an injunction prohibiting the continued deduction of dues
despite signed deduction authorizations.  When Employees
filed the complaint, Washington was still deducting union
dues from their payrolls; however, the deductions ceased
when the one-year payment commitment periods expired.  A
live dispute "must be extant at all stages of review, not
merely at the time the complaint is filed."  *Preiser v.*

---

**³** Our conclusion that state action is absent in the deduction and the
transfer of union dues does not implicate the Seventh Circuit's analysis
on the collection of agency fees.  *See Janus v. Am. Federation of State,
Cty. and Municipal Employees, Council 31*, 942 F.3d 352, 361 (7th Cir.
2019) ("*Janus II*").

**⁴** The district court also properly dismissed the unjust enrichment
claim against the union in light of the contractual agreement between the
parties.  *See Young v. Young*, 164 Wash. 2d 477, 484–85 (2008).

*Newkirk*, 422 U.S. 395, 401 (1975) (citations omitted). Thus, any prospective injunction would not provide relief for Employees' mooted claim. *See Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) ("Claims for injunctive relief become moot when the challenged activity ceases" and "the alleged violations could not reasonably be expected to recur" (citation omitted)). But we are not deprived of jurisdiction because the claim falls within an exception to mootness.

In the class action context, a "controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Sosna v. Iowa*, 419 U.S. 393, 402 (1975). The Court extended this principle to situations where, as here, the district court has not ruled on class certification. *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). A claim qualifies for this "limited" exception if "the pace of litigation and the inherently transitory nature of the claims at issue conspire to make [mootness] requirement difficult to fulfill." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1539 (2018).

Such an inherently transitory, pre-certification class-action claim falls within the "capable of repetition yet evading review" mootness exception if (1) "the duration of the challenged action is 'too short' to allow full litigation before it ceases," *Johnson v. Rancho Santiago Cmty Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010), and (2) there is a reasonable expectation that the named plaintiffs could themselves "suffer repeated harm" or "'it is certain that other persons similarly situated' will have the same complaint," *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089–90 (9th Cir. 2011) (quoting *Gerstein*, 420 U.S. at 110 n.11). Employees' claim satisfies both conditions.

The challenged action—continued payroll deduction of union dues after an employee objects to union membership—is capped at a period of one year, which is too short for the judicial review to "run its course." *See Johnson*, 623 F.3d at 1019 (three years is "too short"). Because Washington continued to deduct union dues until the one-year terms expired, other persons similarly situated could be subjected to the same conduct. For these reasons, we exercise jurisdiction over Employees' claim against Washington.

## B. THE FIRST AMENDMENT

Employees do not claim that joining a union was a condition of their job; they chose to join WFSE. Employees do not offer a serious argument that they were coerced to sign the membership cards; they voluntarily authorized union dues to be deducted from their payrolls. Employees do not argue they were later required to sign the revised union cards; they signed those documents and made the commitment to pay dues for one year. These facts speak to a contractual obligation, not a First Amendment violation. Employees instead argue that the Court's decision in *Janus* voided the commitment they made and now requires the state to insist on strict constitutional waivers with respect to deduction of union dues. This argument ignores the facts and misreads *Janus*.

The First Amendment does not support Employees' right to renege on their promise to join and support the union. This promise was made in the context of a contractual relationship between the union and its employees. When "legal obligations . . . are self-imposed," state law, not the First Amendment, normally governs. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991); *Erie Telecomms., Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1089–90 (3d Cir. 1988)

(distinguishing a First Amendment challenge from a claim to enforce "contractual obligations under the franchise and access agreements").   Nor does the First Amendment provide a right to "disregard promises that would otherwise be enforced under state law."  *Cohen*, 501 U.S. at 671; *cf. Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971) ("The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office.").

*Janus* did not alter these basic tenets of the First Amendment.  The dangers of compelled speech animate *Janus*. 138 S. Ct. at 2463–64.  The Court underscored that the pernicious nature of compelled speech extends to "[c]ompelling individuals to mouth support for views they find objectionable" by forcing them to subsidize that speech. *Id.* at 2463.  For that reason, the Court condemned the practice of "automatically deduct[ing]" agency fees from nonmembers who were "not asked" and "not required to consent before the fees are deducted."  *Id.* at 2460–61.

Employees, who are union members, experienced no such compulsion.  Under Washington law, Employees were free to "join" WFSE or "refrain" from participating in union activities.  *See* RCW 41.80.050.  Washington and WFSE did not force Employees to sign the membership cards or retain membership status to get or keep their public-sector jobs. Employees repeatedly stated that they "voluntarily authorize[d]" Washington to deduct union dues from their wages, and that the commitment would be "irrevocable for a period of one year."  Washington honored the terms and conditions of a bargained-for contract by deducting union dues only from the payrolls of Employees who gave voluntary authorization to do so.  *See* RCW 41.80.100(3)(a). No fact supports even a whiff of compulsion.

18                    BELGAU V. INSLEE

That Employees had the option of paying less as agency
fees pre-*Janus*, or that *Janus* made that lesser amount zero
by invalidating agency fees, does not establish coercion.
Employees' choice was not between paying the higher union
dues or the lesser agency fees. Choosing to pay union dues
cannot be decoupled from the decision to join a union. The
membership card Employees signed, titled "Payroll
Deduction Authorization," begins with the statement: "Yes!
I want to be a union member." This choice to voluntarily
join a union and the choice to resign from it are contrary to
compelled speech. *See Gallo Cattle Co. v. Cal. Milk
Advisory Bd.*, 185 F.3d 969, 975 & n.7 (9th Cir. 1999); *see
also Bauchman for Bauchman v. W. High Sch.*, 132 F.3d
542, 557–58 (10th Cir. 1997) ("a choice whether or not to
sing songs she believe infringed upon" her First Amendment
right "negates" "coercion or compulsion"); *Kidwell v.
Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292–93 (4th
Cir. 1991) ("Where the employee has a choice of union
membership and the employee chooses to join, the union
membership money is not coerced."). By joining the union
and receiving the benefits of membership, Employees also
agreed to bear the financial burden of membership.

*Janus* does not address this financial burden of union
membership. The Court explicitly cabined the reach of
*Janus* by explaining that the "[s]tates can keep their labor-
relations systems exactly as they are—only they cannot force
nonmembers to subsidize public-sector unions." 138 S. Ct.
at 2485 n.27. Nor did *Janus* recognize members' right to
pay nothing to the union. The Court "was not concerned in
the abstract with the deduction of money from employees'
paychecks pursuant to an employment contract" nor did it
give "an unqualified constitutional right to accept the
benefits of union representation without paying." *Janus II*,
942 F.3d at 357–58. We join the swelling chorus of courts

recognizing that *Janus* does not extend a First Amendment right to avoid paying union dues.[5]

In an effort to circumvent the lack of compulsion, Employees define the relevant First Amendment right as the freedom not to pay union dues without "consent that amount to the waiver of a First Amendment right." In arguing that *Janus* requires constitutional waivers before union dues are

---

[5] *See Mendez v. Cal. Teachers Ass'n, et al.*, 419 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020) ("As every court to consider the issue has concluded, *Janus* does not preclude enforcement of union membership and dues deduction authorization agreements . . . ."); *Allen v. Ohio Civil Serv. Emps. Ass'n AFSCME, Local 11*, 2020 WL 1322051, at *12 (S.D. Ohio Mar. 20, 2020) (noting "the unanimous post-*Janus* district court decisions holding that employees who voluntarily chose to join a union . . . cannot renege on their promises to pay union dues"). *See, e.g.*, *Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019); *Creed v. Alaska State Emps. Ass'n/AFSCME Local 52*, 2020 WL 4004794, at *5–10 (D. Alaska July 15, 2020); *Molina v. Pa. Soc. Serv. Union*, 2020 WL 2306650, at *7–8 (M.D. Pa. May 8, 2020); *Durst v. Or. Educ. Ass'n*, 2020 WL 1545484, at *4 (D. Or. Mar. 31, 2020); *Bennett v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31, AFL-CIO et al.*, 2020 WL 1549603, at *3–5 (C.D. Ill. Mar. 30, 2020); *Loescher v. Minn. Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320 and Indep. Sch. Dist. No. 831*, 2020 WL 912785, at *7 (D. Minn. Feb. 26, 2020); *Quirarte v. United Domestic Workers AFSCME Local 3930*, 2020 WL 619574, at *5–6 (S.D. Cal. Feb. 10, 2020); *Hendrickson v. AFSCME Council 18*, 2020 WL 365041, at *5–6 (D.N.M. Jan. 22, 2020); *Hernandez v. AFSCME Cal.*, 424 F. Supp. 3d 912, 923–24 (E.D. Cal. 2019); *Smith v. Super Ct., Cty. of Contra Costa*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2019); *Oliver v. Serv. Emps. Int'l Union Local 668*, 2019 WL 5964778 (E.D. Pa. Nov. 12, 2019); *Anderson v. SEIU*, 2019 WL 4246688, at *2 (D. Or. Sept. 4, 2019); *Seager v. United Teachers L.A.*, 2019 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019); *O'Callaghan v. Regents of Univ. of Cal.*, 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019); *Cooley v. Cal. Statewide Law Enf't Ass'n*, 2019 WL 331170, at *2 (E.D. Cal. Jan. 25, 2019).

20               BELGAU v. INSLEE

deducted, Employees seize on a passage requiring any waiver of the First Amendment right to be "freely given and shown by 'clear and compelling' evidence." *Janus*, 138 S. Ct. at 2486. This approach misconstrues *Janus*. The Court considered whether a waiver could be presumed for the deduction of agency fees only after concluding that the practice of automatically deducting agency fees from nonmembers violates the First Amendment. It was in this context that the Court mandated that nonmembers "freely," "clearly," and "affirmatively" waive their First Amendment rights before any payment can be taken from them. *Id.* The Court discussed constitutional waiver *because* it concluded that nonmembers' First Amendment right had been infringed, and in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement.

We note that there is an easy remedy for Washington public employees who do not want to be part of the union: they can decide not to join the union in the first place, or they can resign their union membership after joining. Employees demonstrated the freedom do so, subject to a limited payment commitment period. In the face of their voluntary agreement to pay union dues and in the absence of any legitimate claim of compulsion, the district court appropriately dismissed the First Amendment claim against Washington.

**AFFIRMED.**