UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kristine Kurk, | No. 2:19-cv-00548-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Los Rios Classified Employees Ass'n, et al., | |
| Defendants. | |

Plaintiff Kristine Kurk ("Kurk"),[1] defendant Los Rios Classified Employees Association ("LRCEA") and defendant Xavier Becerra,[2] in his official capacity as California Attorney General, each have filed a motion for summary judgment. For the following reasons, **the court grants defendants' motions. Plaintiff's motion is denied as moot**.[3]

---

[1] The court notes Susan Shroll is also identified as a plaintiff in the filed complaint, ECF No. 1. On June 2019, Shroll entered a voluntary dismissal of all her claims and she is no longer part of this action. *See* ECF No. 23.

[2] Rob Bonta was sworn in as the Attorney General of California on April 23, 2021 and is **hereby substituted** as a defendant in place of Xavier Becerra. *See* Fed. R. Civ. P. 25(d); Office of Governor Gavin Newsom, "Governor Newsom Swears in Rob Bonta as Attorney General of California" (Apr. 23, 2021), https://www.gov.ca.gov/2021/04/23/governor-newsom-swears-in-rob-bonta-as-attorney-general-of-california/, last visited May 12, 2021.

[3] On March 13, 2020, the court related this matter to *Woltkamp v. Los Rios Classified Employees Ass'n, et al*., Case No. 2:20-00457 (E.D. Cal.). *See* Related Case Order, ECF No. 33. At hearing on the motions addressed by this order, the parties clarified the issues and facts here are virtually identical to those in *Woltkamp*, except for the dates when the respective plaintiffs

1

# I. BACKGROUND

Kurk is a "public school employee" with Los Rios Community College District ("defendant school district"). Compl. ¶¶ 2–3, ECF No. 1. On June 24, 1997, Kurk signed a document titled, "Dues Check Off Form." Jt. Stip., Ex. A ("Dues Check Off Form") at 1, ECF No. 38-7. This Dues Check Off Form expressly stated three options, as follows:

> (1) Union Membership Deduction: ~~$14.00~~[4] $13.00 per month, or currently authorized dues rate; (2) Non-Membership, Agency Service Fee Deduction: ~~$14.00~~ $13.00 per month, or currently authorized dues rate . . .; and (3) Application for Religious Conscientious Objector Status: $14.00 per month, or currently authorized dues rate deduction to authorized non-religious charitable organization – (separate form).

Dues Check Off Form at 1. Kurk selected "Union Membership Deduction," to become a member of LRCEA, signed and dated the Dues Check Off Form. *Id*. On July 1, 2017, defendant school district[5] extended its Collective Bargaining Agreement ("CBA") with LRCEA as the exclusive representative for Kurk's bargaining unit, effective July 1, 2017 through June 30, 2020. Compl. ¶¶ 22–23. LRCEA has represented Kurk since June 24, 1997. *See* LRCEA's Admis. at 6, ECF No. 43-4.

The CBA provides in pertinent part:

> The organizational security provisions described in this article of the Agreement constitute an Agency Shop. Within thirty (30) calendar days of the effective date of this Agreement or the employee being employed into a position in the Bargaining Unit, whichever comes first, each employee shall either join LRCEA as a member and pay its membership dues ("dues"), remain a non-member of LRCEA and pay the fair share service fee ("fee") it charges, or, if qualified pursuant to Section 3546.3 of the [Educational Employment Relations Act] EERA, pay the charitable contribution required by this Agreement.

CBA § 3.1.1 at 13, ECF No. 38-9 (bracketed text added).

---

joined the LRCEA: Kurk joined in 1997 and Woltkamp in 2017. The court recently has issued a separate order in Woltkamp, addressing motions to dismiss and for judgment on the pleadings. *See* Case No. 2:20-00457, ECF No. 50.

[4] The original note has a handwritten interlineation through the typewritten dues amounts, and the proper dues amount is handwritten. *See generally* Dues Check Off Form.

[5] The court notes defendant Los Rios Community College District has not moved for summary judgment. *See* note 6 *infra*.

California's EERA expressly authorizes the collection of agency fees as follows:

> Notwithstanding any other provision of law, upon receiving notice from the exclusive representative of a public school employee who is in a unit for which an exclusive representative has been selected pursuant to this chapter, the employer shall deduct the amount of the fair share service fee authorized by this section from the wages and salary of the employee and pay that amount to the employee organization . . .

Cal. Gov't Code § 3546(a); *see also* Cal. Gov't Code § 3540.1(i)(1).

A separate section of the CBA provides that "[e]ach employee who is a member of [LRCEA] on the effective date of this Agreement or who subsequently becomes a member of [LRCEA] shall, from that date forward, remain as a member of [LRCEA] and pay its dues for the duration of this Agreement and in accordance with the EERA." CBA § 3.1.2 at 13 (brackets added).

In June 2018, the Supreme Court decided *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), holding that payments to unions could not be collected from public employees without the employees' affirmative consent. On September 13, 2018, after learning of the Supreme Court's decision in *Janus*, Kurk sent LRCEA a written notice requesting to end her union membership and revoke her previous authorization for dues deductions. Compl. ¶ 27. LRCEA informed Kurk she would have to remain a union member unless she resigned within the 30-day period following the expiration of the CBA in June 2020. *See Id.* ¶ 28; *see also* LRCEA Response at 4, ECF No. 38-10. Kurk alleges LRCEA relied on the EERA to compel her to remain a union member and continued to deduct union dues from her paychecks each pay period, without her consent. *See* Compl. ¶¶ 28–30.

On March 28, 2019, Kurk filed this suit. After the suit was filed, LRCEA ultimately confirmed Kurk was discharged from union membership, effective July 1, 2020. *See* Bartholome Decl. ¶ 5, ECF No. 45-1. In the complaint, Kurk names LRCEA, the defendant community college district and its President of the Board of Trustees John Knight,[6] alleging deprivation of

---

[6] Defendant community college district and Knight entered a stipulation with plaintiff whereby the district remains as a defendant but would "not oppose or otherwise contest the allegations or underlying legal theories in the Complaint." Stip. at 2, ECF No. 17. In exchange,

3

her First and Fourteenth Amendment rights to refrain from subsidizing the union's speech through dues, without adequate consent as provided in *Janus*. *See* Compl. ¶¶ 43–46, 52. Kurk alleges these defendants violated her First Amendment rights in three ways: (1) deducting LRCEA's dues from her paychecks; (2) claiming the authority to prevent her resignation from LRCEA at a time of her choosing; and (3) enforcing LRCEA's revocation policy with respect to her dues deductions. Compl. ¶¶ 6, 53. In her complaint, Kurk also names the Attorney General and mounts a facial and as-applied challenge to Cal. Gov't Code §§ 3540.1(i)(1) and 3546(a), *see id*. ¶¶ 21 & 24, asserting these statutes violate her right to free speech and association, *id*. ¶ 45. Kurk seeks a permanent injunction prohibiting LRCEA from enforcing the "Maintenance of Membership" provision in the CBA, a judgment declaring the Cal. Gov't Code §§ 3540.1(i)(1) and 3546 violate her First and Fourteenth Amendment rights under the United States Constitution, as well as monetary damages for the alleged violation of her First Amendment rights and recovery of all dues deducted from her wages since her resignation from LRCEA and attorneys' fees and costs under 42 U.S.C. § 1988. Compl. at 10–11 (Prayer for Relief).

Three motions are pending in this case: (1) Kurk's motion for summary judgment ("Kurk MSJ"), ECF No. 37; (2) LRCEA's motion for summary judgment ("LRCEA MSJ"), ECF No. 38; and (3) the Attorney General's motion for summary judgment, accompanied by a request for judicial notice of the information linked to footnotes ("AG MSJ"), ECF No. 39. Finally, plaintiff filed a request for judicial notice ("Req. Judicial Not."), ECF No. 51.

On September 25, 2020, the court held a videoconference hearing on these motions. Shella Sadovnik and Mariah Gondeiro appeared on behalf of plaintiff, Monique Alonso appeared for LRCEA and Maureen Onyeagbako appeared on behalf of the California Attorney General. Following hearing, the court granted the parties leave to file supplemental briefing addressing: (1) two recent cases, *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020) and *Savas v. California State Law Enf't Agency*, No. 20-00032, 2020 WL 5408940 (S.D. Cal. Sept. 9, 2020), and (2) whether

---

plaintiff waives her right to recover attorneys' fees and costs from the defendant community college district if she prevails. *Id.*

4

1  Kurk's First Amendment freedom of association claim raises a question of first impression not
2  addressed by these recent decisions. *See* Minutes, ECF No. 56.  The court's recent order in
3  Woltkamp addresses the same issue of first impression raised by plaintiff here.  *See* Case No.
4  2:20-00457, ECF No. 50.

5  The court submitted the matter after receiving supplemental briefing from Kurk ("Kurk
6  Suppl. Br."), ECF No. 58, and objections from LRCEA, Obj., ECF No. 59.  The Attorney General
7  filed a notice of intent not to file supplemental briefing.  *See* ECF No. 57.  The court addresses all
8  three pending motions here.

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If that party bears the burden of proof at trial, as plaintiff does here in establishing defendants' liability, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts.").  Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. ECities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). These rules are more stringently enforced when evidence is offered in support of a motion for summary judgment because "[v]erdicts cannot rest on inadmissible evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1121 (E.D. Cal. 2006) (alteration in original) (quoting *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000)). Courts are generally "much more lenient" with the evidence of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

The Supreme Court has also taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be

the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

### III. ANALYSIS

#### A. Jurisdiction

The Attorney General challenges the court's jurisdiction to hear this matter on two grounds: standing and mootness. *See* AG MSJ at 15–18. If standing is lacking or the matter is moot, the court must dismiss for lack of jurisdiction. The court, however, finds it has jurisdiction to decide the merits of plaintiff's claims. "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (emphasis in original). Kurk filed her complaint in March 2019, based on LRCEA's continued deduction of membership dues, which continued, until July 2020, for nearly two years after her September 13, 2018 request to withdraw from LRCEA. *See* Compl. ¶¶ 28–30. Kurk had standing at the time she filed her complaint and a controversy existed providing for federal jurisdiction.

#### B. State Action

The same analysis applies to both the Attorney General's and LRCEA's motions for summary judgment. As discussed at hearing, "[t]o establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1149 (9th Cir. 2011). To meet the second prong, a plaintiff must show "the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). A court decides whether defendants were acting under state law by using a two-part test established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). First, the court asks, "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Id.* Second, the court asks whether defendants "may be appropriately characterized as
/////

'state actors.'" *Id.* State action occurs when both questions are answered in the affirmative. *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar*, 457 U.S. at 937–39).

"The Supreme Court has articulated four tests to determine whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted). *See Bain v. California Teachers Ass'n*, 156 F. Supp. 3d 1142, 1153 n.12 (C.D. Cal. 2015) ("Because satisfaction of one state action test can be sufficient the Court only analyzes the complained of conduct under Plaintiffs' strongest theory."). The court addresses the joint action, state compulsion and governmental nexus tests below; the court need not reach the public function test, *see Semerjyan v. Serv. Emps. Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048, 1058 (C.D. Cal. 2020) (rejecting nearly identical statutory arguments; clarifying "Union is not a state actor under the public function test").

In *Polk v. Yee*, 481 F. Supp. 3d 1060, 1066 (E.D. Cal. 2020), this court analyzed analogous facts under the joint action test and found the state's fee deduction on behalf of the union did not render the union a state actor. This court joined the reasoning articulated in *Belgau*, 359 F. Supp. 3d at 1000, *aff'd*, 975 F.3d 940, 947 (9th Cir. 2020), and several other district court decisions in cases where plaintiffs consented to union dues but attempted to opt out of their union agreement after *Janus* was decided. *Belgau* analyzed whether continued union dues deductions from plaintiffs' paychecks amounted to state action and concluded they did not because the "source of the alleged constitutional harm" was the "particular private agreement" between the union and the employees, not a state statute or policy. 359 F. Supp. 3d at 947. The same reasoning applies here. Although there is a connection between the alleged constitutional violation and the alleged state action, plaintiff has not pled facts to show LRCEA acted "in concert" with the state to cause the deduction of dues and prevent her withdrawal from membership. *Id.*; *see Belgau*, 975 F.3d at 947 ("A joint action between a state and a private party may be found . . . [when] the government either (1) affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or (2) otherwise has so far insinuated itself into a position of interdependence with the non-governmental party, that it is

8

recognized as a joint participant in the challenged activity." (internal quotations omitted)). Kurk's argument is unavailing, given the state's lack of involvement in the drafting and executing of LRCEA's agreement with Kurk.

LRCEA's refusal to immediately accept Kurk's resignation and cease paycheck deductions also does not constitute state action under the state compulsion test. Provisions of the state statutes applicable do not support a conclusion the State "exercised coercive power" over LRCEA or engaged in "overt or covert encouragement" to enforcement plaintiff's voluntary agreement. *Belgau*, 359 F. Supp. 3d 1000 at 1014 (internal quotations omitted); *see also Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 845 (9th Cir. 2017) ("[P]ermission of a private choice cannot support a finding of state action, and private parties [do not] face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them" (alterations in original) (internal quotations and citations omitted)). "[A]t the risk of stating the choice too simplistically, [plaintiff] is given the option of protecting free speech or of protecting her vote on the continuation or conditions of work, but not both." *Kidwell v. Transportation Commc'ns Int'l Union*, 946 F.2d 283, 286 (4th Cir. 1991). There is no state compulsion in this case.

Similarly, there is no governmental nexus. "Under the governmental nexus test, a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Naoko*, 723 F.3d at 996 n.13. "Constitutional deprivation caused by [a] private party involves state action if [the] claimed deprivation resulted from exercise of a right or privilege having its source in state authority." *Lopez v. Dep't of Health Servs*., 939 F.2d 881, 883 (9th Cir. 1991) (citing *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614 (1991)). The language of the EERA forecloses any possibility of such a finding here, given the plain and unambiguous meaning of the statutory language. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)

/////

/////

/////

(noting the analysis begins with the statutory text itself). Cal. Gov't Code § 3540.1(i)(1) provides as follows:

> (i) Organizational security is within the scope of representation, and means . . .
>
> (1) An arrangement pursuant to which a public school employee may decide whether or not to join an employee organization, but which requires him or her, as a condition of employment, if he or she does join, to maintain his or her membership in good standing for the duration of the written agreement. However, an arrangement shall not deprive the employee of the right to terminate his or her obligation to the employee organization within a period of 30 days following the expiration of a written agreement.

*Id*. This language expressly provides public school employees like plaintiff a choice "whether or not to join an employee organization" and does not impose a state requirement conditioning employment on payment of fees to a union regardless of an employee's choice. *Id*. In other words, only if an employee chooses to join a union, she may be required "to maintain . . . her membership in good standing for the duration of the written agreement." *Id*. Plaintiff concedes she voluntarily agreed to union membership during her onboarding process when she personally signed the Dues Check Off Form as a new hire in 1997. *See* Dep. Tr. at 4:15–18, ECF No. 38-4 ("Q- . . . And would you agree that, by signing this form, you authorized the deduction reflected on Exhibit A [Dues Check Off Form]? A- Yes.") (brackets added). This authorization continued through every CBA since Kurk joined in 1997 through June 30, 2020, after *Janus* was decided. Compl. ¶¶ 22–23. She exercised the power to enter a contract with LRCEA that provided for representation as well as union membership and dues deductions. As the Ninth Circuit explained in *Belgau*:

> *Janus* does not address this financial burden of union membership. The Court explicitly cabined the reach of *Janus* by explaining that the [s]tates can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions.

2020 WL 5541390, at *8 (citing *Janus*, 138 S. Ct. at 2485 n.27) (internal quotation and citation omitted).

Finally, plaintiff argues LRCEA could not have included the provision for maintenance of membership dues for the entire term of the CBA without California Government Code section

10

3540.1(i)(1) and related provisions in the EERA, which she says are "fairly attributable to the state." Kurk MSJ at 9 n.4 (citing Cal. Gov't Codes §§3540.1(i) and 3546). However, it is undisputed the state was not a party to plaintiff's private agreement with LRCEA. Counterstatement re Stip. Facts No. 6, ECF No. 49. *See Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 445 F. Supp. 3d 695, 704 (C.D. Cal. 2020) (union deduction of membership dues does not meet any of the four tests). By electing to join the union and receive the benefits of membership, Kurk agreed to bear the financial burden of membership. *Belgau*, 2020 WL 5541390, at *7 ("This choice to voluntarily join a union and the choice to resign from it are contrary to compelled speech."). The court finds as a matter of law plaintiff cannot establish LRCEA is a state actor liable under § 1983. Conversely, the State as a matter of law cannot be liable for declaratory relief as plaintiff seeks. Prayer for Relief, § A.

Defendants' motions for summary judgment are **granted**.

### IV.     CONCLUSION

Because LRCEA continued to deduct union dues until the CBA expired, *see* Compl. ¶ 22, plaintiff has a claim for retrospective damages she may file in state court. Supplemental jurisdiction, is "a doctrine of discretion, not of plaintiff's right . . . decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also* 28 U.S.C. § 1367(c)(2). Here, the court exercises its discretion to decline supplemental jurisdiction over any contract-based claim for damages for dues paid by plaintiff from September 19, 2018 to July 1, 2020. *See Titan Global LLC v. Organo Gold Intern., Inc.,* No. 12-2104, 2012 WL 6019285, at *11–12 (N.D. Cal. Dec. 2, 2012) (declining supplemental jurisdiction over claim requiring interpretation of agreement not at issue in other claims).

For the reasons set forth above, **the court grants defendants' motions for summary judgment**, ECF Nos. 38 & 39. Kurk's motion for summary judgment, ECF No. 37, **is denied as moot**. The Clerk of Court is directed to enter judgment for defendants and close case.

/////

1         This order resolves ECF Nos. 37, 38, 39, 51.

2         IT IS SO ORDERED.

3   DATED: May 18, 2021.

                                           _____
                                           CHIEF UNITED STATES DISTRICT JUDGE